IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TODD RICHARD CHAZEN,

                      Petitioner,

v.                                                    OPINION & ORDER

LOUIS WILLIAMS, II,                                  17-cv-447-jdp

                      Respondent.

---

Pro se petitioner Todd Richard Chazen, a federal prisoner incarcerated at the Federal Correctional Institution in Oxford, Wisconsin, seeks a writ of habeas corpus under 28 U.S.C. § 2241. Chazen challenges his sentence from the United States District Court for the District of Minnesota, arguing that the Supreme Court's decisions in *United States v. Mathis*, 136 S. Ct. 2243 (2016), and *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidate his sentence, which was enhanced under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e).

Before the court issued an order screening his petition, Chazen filed a motion to supplement his petition to add a new habeas claim. Dkt. 4. I will screen Chazen's original and supplemental habeas claims together under Rule 4 of the Rules Governing Section 2254 Cases, which apply to Section 2241 petitions. For the reasons discussed below, I will allow Chazen to proceed beyond screening and appoint counsel for him.

BACKGROUND

I draw the following facts from Chazen's petition, his criminal proceeding, and his prior habeas proceedings. Dkt. 2; *United States v. Chazen*, No. 10-cr-332 (D. Minn. filed Nov. 2010);

*United States v. Chazen*, No. 13-cv-1850, 2013 WL 4504295 (D. Minn. Aug. 23, 2013); *Chazen v. United States*, No. 16-2231, Dkt. 2 (8th Cir. filed May 18, 2016).

In March 2011, a jury found Chazen guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), and he was sentenced on July 11, 2011. The sentencing court concluded that Chazen was an armed career criminal under the ACCA, which requires a mandatory minimum sentence of 15 years for a criminal defendant with three prior convictions of "violent felonies" or "serious drug offenses." In Chazen's case, he had five predicate offenses:

1. a September 11, 1995 second-degree assault conviction under Minn. Stat. § 609.222;
2. a December 3, 2002 second-degree controlled substance conviction under Minn. Stat. § 152.022;
3. a June 3, 2003 second-degree burglary conviction under Minn. Stat. § 609.582;
4. a June 3, 2003 second-degree burglary conviction under Minn. Stat. § 609.582; and
5. a June 3, 2003 escape-from-custody conviction under Minn. Stat. § 609.485.

*Chazen*, 2013 WL 4504295, at *1. The third and fourth burglary convictions occurred on the same day but at different places. "Specifically, Chazen pled guilty to commandeering a golf cart and using it to steal items from a golf course concession stand. Chazen and his accomplices then abandoned the golf cart, stole a truck, and drove the truck through the front doors of a convenience store, intending to tow away the ATM inside." *Id*. The sentencing court concluded that Chazen was an armed career criminal and sentenced him to 252 months of incarceration.

Chazen then filed two § 2255 motions to challenge his sentence. He filed his first § 2255 motion in 2013, raising two challenges. First, he argued that the sentencing court incorrectly applied the modified categorical approach to his escape-from-custody conviction. Second, he argued that the sentencing court erred in counting his two burglary convictions as

predicate offenses when the government had conceded that those convictions did not qualify. *See generally Chazen*, No. 10-cr-332, Dkt. 85 (D. Minn. July 10, 2013). The sentencing court denied his motion. *Chazen*, No. 10-cr-332, Dkt. 89 (D. Minn. August 23, 2013).

Chazen sought authorization from the Eighth Circuit to file a second § 2255 motion in May 2016. *Chazen v. United States*, No. 16-2231, Dkt. 2 (8th Cir. May 18, 2016), and before obtaining authorization, he filed a second § 2255 motion with the sentencing court, *Chazen*, No. 10-cr-332, Dkt. 92 (D. Minn. June 27, 2016). He argued that he was no longer an armed career criminal under *Samuel Johnson*, which held that the ACCA's residual clause was unconstitutional. The Eighth Circuit summarily denied authorization, and the sentencing court dismissed his second § 2255 motion. *Chazen*, No. 10-cr-332, Dkt. 93 and Dkt. 95 (D. Minn. June 27, 2016).

ANALYSIS

Numerous courts have already concluded that a petition relying on *Mathis* satisfies the procedural requirements for a savings-clause § 2241 petition. *See e.g.*, *Pulliam v. Krueger*, No. 16-cv-1379, 2017 WL 104184, at *2 (C.D. Ill. Jan. 10, 2017); *cf. Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016) ("[S]ubstantive decisions such as Mathis presumptively apply retroactively on collateral review."). I have done the same. *See Edwards v. Williams*, No. 17-cv-114, Dkt. 3 (W.D. Wis. May 11, 2017). So I will screen the merits of Williams's petition.

Chazen contends that he is no longer an armed career criminal under the ACCA. He has five prior convictions that could qualify him as an armed career criminal, so he needs to eliminate at least three of these convictions to obtain habeas relief.

Here are the components of Chazen's habeas claim: (1) both of his second-degree burglary convictions no longer qualify as predicate offenses after *Mathis*; (2) his escape-from-custody conviction no longer qualifies as a predicate offense after *Samuel Johnson*; (3) his controlled substance conviction no longer qualifies as a predicate offense after *Mathis*; and (4) his second-degree assault conviction no longer qualifies as a predicate offense after *Mathis*.

## A. 2003 Minnesota burglary convictions under *Mathis*

Under *Taylor v. United States*, and its successors, *Descamps v. United States* and *Mathis*, a district court must first apply the "categorical approach" when enhancing sentences under the ACCA and compare elements of each prior offense with elements of a generic offense. 495 U.S. 575, 602 (1990); 133 S.Ct. 2276, 2281 (2013); 136 S.Ct. at 2248. The elements of the offenses govern, and district judges generally disregard the actual facts of the underlying offense. *Yates v. United States*, 842 F.3d 1051, 1052 (7th Cir. 2016).

This rule has one exception, which *Mathis* clarified. When the relevant statute has a "more complicated (sometimes called 'divisible') structure," listing multiple crimes by providing "multiple elements disjunctively," the court may apply the "modified categorical approach" and examine "a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. But when the statute lists multiple "means" to satisfy just one element—as opposed to listing alternative elements of the crime—the court cannot apply the modified categorical approach. *Id*. at 2253. If the categorical approach was the appropriate option and that approach showed that the prior offense covered "a greater swath of conduct than the elements of the relevant ACCA offense," then the prior offense would no longer qualify as a predicate offense under the ACCA. *Id*. 2251.

Chazen's 2003 burglary convictions could be candidates for a *Mathis* challenge. The 2003 version of the Minnesota Statutes defined the crime of burglary this way:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the second degree and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both. . . .

Minn. Stat. § 609.582. The Eighth Circuit has held that this text is divisible as it provides two alternative versions of the crime under *Mathis*. *United States v. Walker*, 840 F.3d 477, 489 (8th Cir. 2016). The first alternative version is "enter[ing] a building without consent and with intent to commit a crime," which qualifies as a violent felony because it matches the generic version of the offense, "any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. The second alternative version is "enter[ing] a building without consent and commits a crime while in the building"—i.e., entering a building not necessarily with intent to commit a crime but ends up committing a crime within the building. This later version does not match the generic offense. *See Walker*, 840 F.3d at 489. The Eighth Circuit concluded that these alternative versions required examining a limited set of documents to see under which version of the crime a criminal defendant was convicted and remanded the case for resentencing. *Id*. at 491.

Chazen has not submitted all pertinent documents, so this is as far as I will go in this order. In briefing the petition, the parties should explain, among other things, whether Chazen's 2003 burglary convictions are still violent felonies after *Mathis*.

**B. 2003 Minnesota escape-from-custody conviction under *Samuel Johnson***

Chazen's *Samuel Johnson* challenge against his escape-from-custody conviction does not plainly appear meritless. So he may proceed on this claim as well.

Under *Samuel Johnson*, the residual clause of the ACCA is unconstitutionally vague, so a conviction is no longer a predicate offense solely on the basis that it "involves conduct that presents a serious potential risk of physical injury to another." 135 S. Ct. 2551. The Supreme Court has held that *Samuel Johnson* applies retroactively. *Welch v. United States*, 136 S. Ct. 1257 (2016).

Chazen's escape-from-custody conviction is a candidate for a *Samuel Johnson* challenge. His challenge hinges on the definition of the term "escape" under the 2003 version of the Minnesota Statutes, which defined the term this way:

> "Escape" includes departure without lawful authority and failure to return to custody following temporary leave granted for a specific purpose or limited period.

Minn. Stat. § 609.485. The sentencing court concluded that this definition had two versions of the crime: "'departure without lawful authority,' a violent crime, and 'failure to return to custody following temporary leave granted for a specific purpose or limited period,' a non-violent crime." *Chazen*, 2013 WL 4504295, at *4 (citation omitted). After examining the charging documents, the court concluded that Chazen was convicted for departing without lawful authority. *Id*. The court then relied on *United States v. Furqueron*, where the Eighth Circuit held that departure without lawful authority constitutes a violent crime because departure without lawful authority is "roughly similar to burglary, posing a similar degree of risk of physical injury and involving purposeful, aggressive conduct. 605 F.3d 612, 615–16 (8th Cir. 2010). Like burglary, escape from a secured setting is 'a stealth crime that is likely to cause an

eruption of violence if and when it is detected.'" *Id*. at 615 (quoting *United States v. Pratt*, 568 F.3d 11, 22 (1st Cir. 2009)). This reasoning relied on the residual clause in § 4B1.2(a) of the sentencing guidelines, which in turn tracked the language of the residual clause of the ACCA. *Id*. at 614. Because the residual clause of the ACCA is now unconstitutionally vague under *Samuel Johnson*, Chazen may have a viable challenge to his escape-from-custody conviction.

**C. 2002 Minnesota controlled substance conviction under *Mathis***

Chazen's has a cognizable habeas claim that his controlled substance conviction no longer qualifies as a predicate offense after *Mathis* because Minn. Stat. § 152.022 criminalizes mere possession, not only possession with intent to manufacture or distribute. Here is the definition of a "serious drug offense" under the ACCA:

> [T]he term "serious drug offense" means--
>
>> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>>
>> (ii) an offense under State law, involving manufacturing, distributing, or *possessing with intent to manufacture or distribute*, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

18 U.S.C. § 924 (emphasis added). Minn. Stat. § 152.022 provides:

> Subd. 2. **Possession crimes**. A person is guilty of controlled substance crime in the second degree if:
>
>> (1) the person unlawfully possesses one or more mixtures of a total weight of six grams or more containing cocaine, heroin, or methamphetamine;

> (2) the person unlawfully possesses one or more mixtures of a total weight of 50 grams or more containing a narcotic drug other than cocaine, heroin, or methamphetamine;
>
> (3) the person unlawfully possesses one or more mixtures of a total weight of 50 grams or more containing amphetamine, phencyclidine, or hallucinogen or, if the controlled substance is packaged in dosage units, equaling 100 or more dosage units; or
>
> (4) the person unlawfully possesses one or more mixtures of a total weight of 50 kilograms or more containing marijuana or Tetrahydrocannabinols.

The petition does not show whether Chazen was convicted under one of these subsections. If Chazen's Minnesota's possession crime is deemed broader than that of the ACCA, Chazen could have a viable claim that his 2002 controlled substance conviction is not a predicate offense.

**D. 1995 Minnesota second-degree assault conviction under *Mathis***

Chazen contends that his 1995 second-degree assault conviction no longer qualifies as a predicate offense because he was only 16 years old at the time of the conviction. Dkt. 4. He relies on *United States v. Headbird*, 832 F.3d 844 (8th Cir. 2016), which in turn examined Minn. Stat. § 609.222 under *Mathis*.

In *Headbird*, the Eighth Circuit noted that under the ACCA, a juvenile conviction for a violent crime must have "involv[ed] the use or carrying of a firearm, knife, or destructive device." *Id*. at 847 (quoting 18 U.S.C. § 924). Examining § 609.222, which defines second-degree assault as "assault[ ] another with a dangerous weapon," the court reasoned that the crime has two elements: (1) assault and (2) the use of a "dangerous weapon." *Id*. at 848. The court then looked to § 609.02, which defined "dangerous weapon" by listing types of weapons:

> any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm,

8

> any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, or any fire that is used to produce death or great bodily harm.

*Id*. at 847. The court concluded that this language provided "factual means" of committing a single element because such a list was an example of alternative means provided in *Mathis*. *Id*. at 849 (quoting *Mathis*, 136 S. Ct. at 2249 ("[U]se of a 'knife, gun, bat, or similar weapon" would all qualify' . . . Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense . . . .")). The Eighth Circuit ultimately held that the Minnesota statute covered "a greater swath of conduct than the elements of the relevant ACCA offense," and the second-degree assault as a juvenile did not qualify as a predicate offense under the ACCA. *Id*. (quoting *Mathis*, 136 S.Ct. at 2251).

Here, Chazen indicates that he was 16 years old and that his second-degree assault conviction cannot be a predicate offense. The 1995 versions of § 609.222 and § 609.02 are essentially the same as the provisions discussed in *Headbird*. Section 609.02's definition of a dangerous weapon, like the example in *Mathis*, lists various kinds of weapons: firearm, combustible liquid, any other device likely to cause death or great bodily harm, and any fire used to produce death or great bodily harm. So § 609.02 can be construed as listing alternative means to commit a crime, and under *Mathis*, Chazen has a colorable claim that his 1995 second-degree assault conviction no longer qualifies as a predicate offense.

### E. Appointment of counsel

A habeas petition challenging a sentence is "not part of the original criminal proceeding; it is an independent civil suit," so a habeas petitioner does not have a constitutional right to counsel. *Rauter v. United States*, 871 F.2d 693, 695 (7th Cir. 1989). But a district court may

9

appoint counsel for a habeas petitioner if "the interests of justice so require" and the petitioner is "financially eligible." 18 U.S.C. § 3006A(a)(2).

When deciding to appoint counsel in habeas cases, a district court considers three factors: (1) whether the petitioner "could obtain justice without an attorney" given the complexity of the case and the petitioner's ability; (2) whether the petitioner "could not obtain a lawyer on [his] own"; and (3) whether the petitioner would have "a reasonable chance of winning with a lawyer at [his] side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (quoting *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir.1997)); *see also Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir. 2000). And the petitioner must be financially eligibile, which requires him to show only that he cannot afford counsel; this is "a lower standard than indigency." *United States v. Sarsoun*, 834 F.2d 1358, 1362 (7th Cir. 1987). Any doubt as to the petitioner's financial eligibility is resolved in his favor, and "erroneous determinations of eligibility may be corrected at a later time." Admin. Office of the U.S. Courts, Guide to Judiciary Policies and Procedures, Vol. 7, pt. A, § 210.40.30(b).[1]

I am persuaded that appointing counsel for Chazen serves the interests of justice. His submissions indicate that the complexity of this case outweighs his ability. He would have difficulties obtaining counsel because he is a prisoner. His petition appears to have some merit, so he has a reasonable chance of winning with counsel.

It is likely that Chazen is financially eligible. He qualified for a federal public defender during his criminal proceeding, *see Chazen*, 10-cr-332 (D. Minn. filed Nov. 18, 2010), and his financial situation presumably did not improve in prison. I will begin the process of appointing

---

[1] Available at http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-210-representation-under-cja.

counsel for Chazen and direct the clerk of court to send a Criminal Justice Act (CJA) form 23 to Chazen. Chazen must complete and file that form by the deadline set below. Unless the form shows that Chazen can afford counsel, I will not issue a separate order assessing his finances. The CJA form 23 requires Chazen to certify it under penalty of perjury, and if I later determine that he can afford counsel, I will consider terminating the appointment of counsel and directing Chazen to reimburse his attorney for the cost of representation. § 3006A(c), (f).

## CONCLUSION

Chazen's petition does not plainly appear meritless, so I will allow him to proceed beyond the preliminary screening. I will appoint counsel for Chazen. The counsel may amend and brief Chazen's petition, and after reviewing the amended submissions, the court will set a briefing schedule.

ORDER

IT IS ORDERED that:

1. The court will appoint counsel for petitioner Todd Richard Chazen.

2. The clerk of court is directed to send a copy of this order and a Criminal Justice Act form 23 to petitioner.

3. Petitioner must complete and file the CJA form 23 within four weeks from the date of this order.

Entered November 28, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge